IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**JOHN E. TEAGUE,**

**Plaintiff,**

**v.**

**SGT E. MAYO, et al.,**

**Defendants.**                                             No. 00-CV-0731-DRH

<u>**MEMORANDUM AND ORDER**</u>

**HERNDON, District Judge:**

### I. <u>Introduction and Background</u>

On September 18, 2000, John Teague, while an inmate incarcerated at the Menard Correctional Center, filed a *pro se* complaint against Sergeant Mayo and C/O Taylor for deprivations of his constitutional rights pursuant to **42 U.S.C. § 1983** (Doc. 1).[1]  Specifically, Plaintiff's complaint alleged that he suffers from degenerative joint disease.  Seeking relief from the pain of his condition, Plaintiff asked Sergeant Mayo to take him to the health care unit.  Instead of taking him to the health care unit, Teague claims that Mayo placed him in handcuffs and, accompanied by Correctional Officer Taylor, took him back to his cell.  There, Taylor allegedly held Teague's arms up while Sergeant Mayo burned his legs with a cigarette.  Sergeant Mayo then removed Teague's pants and inserted a broom stick into Teague's rectum.

---

[1] The record reflects that Teague has been transferred to Pontiac Correctional Center.

On May 27, 2004, Magistrate Judge Frazier appointed attorney Kurtis B. Reeg to represent Teague for the final pretrial conference and the trial in this matter (Doc. 17). On July 2, 2004, Magistrate Judge Frazier held the Final Pretrial Conference and certified the case ready for trial (Doc. 24). According to the minutes of the Final Pretrial Conference, Judge Frazier allowed Teague thirty days to seek leave to amend his complaint.

On September 30, 2004, the Court granted Teague leave to amend his complaint *instanter* (Doc. 32). In his Amended Complaint, Teague claims that Defendants Mayo, Taylor and Cowen inflicted excessive force upon him, deprived him of medical attention in segregation, made threats against his life and failed to promulgate and enforce rules and policies to protect him from harm in violation of his Eighth Amendment right to be free from cruel and unusual punishment (Count I). He also claims that Defendants failed to provide access to basic procedures for resolving grievances in violation of rights guaranteed by the due process clause of the Fourteenth Amendment (Count II). Thereafter, Defendants Mayo and Taylor filed motions to dismiss and for summary judgment on October 18, 2004 (Docs. 33 & 34). On March 21, 2005, Teague filed his response to the motion for summary judgment (Doc. 44) and Defendants filed their reply (Doc. 46).

Now pending before the Court is a Report and Recommendation ("the Report") submitted by Magistrate Judge Frazier on August 9, 2005 pursuant to **28 U.S.C. § 636(b)(1)(B)** (Doc. 47). The Report recommends that the Court grant in part and deny in part the motion to dismiss. The Report states that the Court

should dismiss with prejudice Count II of the First Amended Complaint and the claims against Defendants in their official capacities. Further, the Report recommends that the Court grant in part and deny in part the motion for summary judgment. In particular, the Report finds that the Court should grant judgment on the medical care claim in contained in Count I of the First Amended Complaint.

The Report was sent to the parties with a notice informing them of their right to appeal by way of filing "objections" within ten days of service of the Report. Plaintiff and Defendants have filed objections to the Report (Docs. 50 & 53). Defendants object to the portion of the Report that recommends denying Defendants' motion to dismiss Teague's claims of threatening or derogatory language contained in Count I of the First Amended Complaint. Teague objects to the Report's recommendation that Count II of the Amended Complaint be dismissed with prejudice and that judgment be entered in favor of Defendants on the medical care claim contained in Count I of the Amended Complaint. Therefore, the Court must undertake de novo review of the portions of the Report to which an objection was made.

## II. Analysis

### Motion to Dismiss Standard

In reviewing a motion to dismiss , the court reviews all facts alleged in the complaint and any reasonable inferences drawn therefrom in the light most favorable to the plaintiff. ***See Marshall-Mosby v. Corporate Receivables, Inc.,***

**205 F.3d 323, 326 (7th Cir. 2000)**.  A district court may also take judicial notice of matters of public record without converting the pending motion into a request for summary judgment. *See Doherty v. City of Chicago,* **75 F.3d 318, 324 n. 4 (7th Cir. 1996)**.  A plaintiff is not required to plead the facts or elements of a claim, with the exceptions found in Federal Rule of Civil Procedure 9. *See Swierkiewicz v. Sorema,* **534 U.S. 506, 511 (2002);** *Walker v. Thompson,* **288 F.3d 1005, 1007 (7th Cir. 2002)**.  Dismissal is warranted only if "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* **355 U.S. 41, 45-46 (1957)**.  The "suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Graehling v. Village of Lombard, Ill.,* **58 F.3d 295, 297 (7th Cir. 1995)**.

First, the Court will address Defendants' objection that Magistrate Judge Frazier erred when he recommended that Defendants' motion to dismiss as to Plaintiff's claims of threatening and derogatory comments be denied.  Defendants contend that these statements are not a constitutional violation either standing alone or in conjunction with the use of force claim.  Further, Defendants contend that leaving these allegations of threats and derogatory comments as part of his claims misstates the issues that will eventually be submitted to the jury.  The Court rejects this objection.  The Court agrees with the Report's recommendation on this issue.  While it is true that these statements alone would not constitute an Eighth

Amendment violation, the Court finds that these statements are part and parcel of Plaintiff's excessive force claim. Here, Teague has alleged sufficient facts that Defendants Mayo and Taylor were personally involved in the malicious or sadistic infliction of excessive force. *See Hudson v. McMillian*, **503 U.S. 1, 6-7 (1992)**. Thus, the Court rejects Defendants' objection and adopts the Report's recommendation denying the motion to dismiss as to the threatening and derogatory comments contained in Count I of the First Amended Complaint.

Now the Court turns to address Teague's objection to Magistrate Judge Frazier's recommendation to dismiss with prejudice Count II of the Amended Complaint. In his Report, Magistrate Judge Frazier found that Plaintiff's right to the Illinois prison grievance process was only a "state created procedural right" and not a "protected liberty interest requiring the procedural safeguards of the Fourteenth Amendment." Plaintiff maintains that Magistrate Judge Frazier failed to consider his claim that Defendants transferred him to the Pontiac Corrections Center in order to deny him his due process rights. The Court rejects Teague's objection and agrees with the Report.

An inmate does not have a substantive due process right to a grievance procedure. *Antonelli v. Sheahan*, **81 F.3d 1422, 1430 (7th Cir. 1995)(Finding the plaintiff had no right to a grievance procedure adequate to offer redress of his grievances)**. The only right attached to the grievance process is a procedural one, that an inmate must be allowed to exhaust his administrative remedies in order

to pursue his right of access to the courts. **Id**; ***Dewalt v. Carter*, 224 F.3d 607, 618 (7th Cir. 2000)**.

Here, Teague has not alleged that he was unable to file an receive a response to his grievance. The Court finds that Plaintiff's allegations against Taylor and Mayo do not create a substantive right under the Fourteenth Amendment as Teague does not have a protected liberty interest in the grievance process. Thus, the Court **ADOPTS** the Report's recommendation to grant the motion to dismiss with prejudice Count II of the First Amended Complaint.

**Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. **FED.R.CIV.P. 56(c)**. In seeking a grant of summary judgment the moving party must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." ***Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting FED.R.CIV.P. 56(c))**. This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case." ***Id.* at 325**. Once the movant has met this burden, the non-moving party cannot simply rest on the allegations or denials in the pleadings, but, "by affidavits or as otherwise provided for in [Rule 56], must set forth specific

facts showing that there is a genuine issue for trial." **FED.R.CIV.P. 56(e)**. A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." ***Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)**. Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." ***Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Insolia v. Philip Morris, Inc.,* 216 F.3d 596, 599 (7th Cir. 2000)**. The court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences that favor the non-moving party. ***Anderson,* 477 U.S. at 255; *Bay v. Cassens Transport Co.,* 212 F.3d 969, 972 (7th Cir. 2000)**.

Lastly, Teague objects to Magistrate Judge Frazier's recommendation that judgment should be entered in favor of Defendants and against him on the medical care claim in Count I of the First Amended Complaint. In particular, Plaintiff contends that Magistrate Judge Frazier improperly concluded that the "facts described by plaintiff could not support a finding that Taylor and Mayo responded to plaintiff's serious medical needs with deliberate indifference."

The Eighth Amendment requires the government " 'to provide medical care for those whom it is punishing by incarceration." ***Snipes v. Detella,* 95 F.3d 586, 590 (7th Cir.1996) (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976))**. To state a claim of cruel and unusual punishment,

"a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." **Estelle, 429 U.S. at 106**. Therefore, a plaintiff must establish facts from which it can be inferred that he had a serious medical need and that prison officials were deliberately indifferent to this need. **See Estelle, 429 U.S. at 104; see also Gutierrez v. Peters, 111 F.3d 1364, 1369 (7th Cir. 1997)**. In attempting to define "serious medical needs," the Court of Appeals for the Seventh Circuit has held that they encompass not only conditions that are life threatening or that carry risks of permanent, serious impairment if left untreated, but also those in which the deliberately indifferent withholding of medical care results in needless pain and suffering. **See Gutierrez, 111 F.3d at 1371, 1373. ("'serious' medical need is one that has been diagnosed by a physician as mandating treatment")**.

The Supreme Court has held that deliberate indifference means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." **Farmer v. Brennan, 511 U.S. 824, 837 (1994)**. Inadvertent error, negligence, gross negligence or even ordinary malpractice are insufficient grounds for invoking the Eighth Amendment. **See Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996); see also Snipes, 95 F.3d at 590-91**. Deliberate indifference in the denial or delay of medical care can be shown by a defendant's actual intent or reckless disregard. Reckless disregard is highly unreasonable conduct or a gross departure from

ordinary care in a situation in which a high degree of danger is readily apparent. *See Benson v. Cady,* 761 F.2d 335, 339 (7th Cir. 1985). The question is whether the denial of medical treatment is "so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate the prisoner's condition," *Snipes,* 95 F.3d at 592 (giving rise to a claim of deliberate indifference). *See also Estelle,* 429 U.S. at 104 (holding that deliberate indifference "is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed").

Teague admits that he did testify that Defendants did not deny him medical care *after* the attack. However, he contends that his "claim is that defendants denied him medical treatment while he was in segregation, and not that they denied him medical treatment immediately after the alleged attack." (Doc. 53, p. 3). Specifically, Teague argues that while he was in segregation he continued to experience pain from the attack and that Defendants intentionally denied and/or delayed him access to medical treatment. He contends that he only received medical treatment after he faked a suicide attempt.

Based on a review of the record, the Court finds that neither Taylor nor Mayo were deliberately indifferent to Teague's medical care as alleged in the Count I of the First Amended Complaint. As to the medical care claim, Teague alleges that "[o]n or about July 16, 1999, Plaintiff went to Sergeant Mayo to request medical

treatment for plaintiff's joint disease." (Doc. 49; p. 2, ¶ 9). The First Amended Complaint further alleges that "[d]efendants then further denied plaintiff medical treatment while plaintiff was in segregation." (Doc. 49; p. 3, ¶ 11).

As the Report indicates, Teague testified to the following about his medical treatment in segregation:

> And I'm laying there - I was standing up there and I felt something warm running down my leg. It was blood. And I start kicking the door you know. Nobody heard me. So the way I played it off, in order to get somebody's attention, I put a sheet around my neck and I sat down by the toilet with it tied on the bed like I was hanging myself. And the inmate that was working in seg, he saw it. So he called the officers in and said, Teague's hanging himself, which I wasn't hanging. That never run across my mind to do something to myself. I was just trying to get some attention where I could get to the hospital because I'm bleeding out of my rectum, you know. So about four officers came, opened the door up, snatched me out of the cell, took me to the hospital.

(Doc. 45; Exhibit 7A, p. 10). Plaintiff then testified that he was evaluated by a psychiatrist who admitted him to the hospital. He also testified that he was examined by a medical doctor, who prescribed treatment for possible hemorrhoids. After that, a doctor found a "bump" in Teague's rectum and believed that Plaintiff may have hemorrhoids. Teague thinks that he suffered a traumatic injury that was mis-diagnosed.

There is nothing in the record that indicates that Mayo and Taylor were assigned to the segregation unit, where Teague was housed after the attack. Further, the record does not reveal any evidence that Mayo and Taylor denied him medical care after the attack. In fact, Teague has not presented *any* evidence that Taylor and Mayo denied him medical treatment *after* the attack while he was in segregation.

While Plaintiff submitted documents that state that Defendant Mayo failed to follow doctor's orders prior to July 19, 1999, he has not submitted any evidence to establish that Defendants Taylor and Mayo were deliberately indifferent to his medical needs while he was housed in segregation. The Court finds that Taylor and Mayo are entitled to judgment as a matter of law on Teague's claims for medical care after the attack. Thus, the Court **REJECTS** Teague's objections to this portion of the Report and **ADOPTS** the Report's finding that summary judgment is proper on Count I in favor of Defendants and against Plaintiff on his medical care claim contained in Count I of the First Amended Complaint.

### III. Conclusion

Accordingly, the Court **ADOPTS** Report in its entirety (Doc. 47). The Court **DENIES in part** and **GRANTS in part** Defendants' motion to dismiss (Doc. 33). The Court **DISMISSES with prejudice** Plaintiff's damage claims against Defendants in their official capacities and Count II of the First Amended Complaint. Further, the Court **GRANTS in part** and **DENIES in part** Defendants' motion for partial summary judgment (Doc. 34). The motion is denied as to failure to exhaust administrative remedies with respect to portions of Count I of the First Amended Complaint. The motion is **granted** as to the medical care claim contained in Count I of the First Amended Complaint. The Court **ORDERS** the Clerk of the Court to enter judgment in favor of Defendants Sergeant Mayo and Officer Taylor and against

John Teague on the medical care claim contained in Count I of the First Amended Complaint.

**IT IS SO ORDERED.**

Signed this 9th day of September, 2005.

/s/    David RHerndon
**United States District Judge**